

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed November 15, 2021

*United States Bankruptcy Judge*

___

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § | |
| Scott Hartman, | § § | Case No. 20-32976-hdh7 |
| Debtor. | § § | |

| | | |
|---|---|---|
| VL Wallace Investments, LLC *dba* Transworld Business Advisors of North DFW, | § § § § | |
| Plaintiff, | § § | Adv. Proc. No. 21-3013 |
| v. | § § | |
| Scott Hartman, | § § | |
| Defendant. | | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On March 5, 2021, VL Wallace Investments, LLC *dba* Transworld Business Advisors of North DFW (referred to herein as "Transworld North DFW" or the "Plaintiff") filed a complaint[1] initiating the above-captioned adversary proceeding against Scott Hartman. The Plaintiff has

___

[1] *Complaint Objecting to the Dischargeability of Certain Debts Pursuant to 11 U.S.C. § 523* [Docket No. 1] (the "Complaint").

asserted claims against Mr. Hartman for tortious interference and aiding in the usurpation of corporate opportunities, and through the Complaint, the Plaintiff seeks a declaration from this Court that the debts owed to it by Mr. Hartman are nondischargeable pursuant to 11 U.S.C. § 523(a)(6), which excepts from discharge debts for willful and malicious injury by a debtor to another entity.

The parties submitted a joint pretrial order that was entered by the Court,[2] and trial was held trial on November 1 and 2, 2021. After trial, the Court took the matter under advisement. The following are the Court's Findings of Fact and Conclusions of Law, issued pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7052.[3] For the reasons set forth in greater detail below, the Court finds and concludes that in this case, the Plaintiff has not satisfied its burden to except its debt from discharge under section 523(a)(6).

## I. JURISDICTION AND VENUE

This Court has jurisdiction over the parties and claims asserted in this proceeding under 28 U.S.C. § 1334. The claims in this adversary proceeding are core matters under 28 U.S.C. § 157(b)(2)(A) and (I), as they involve a determination as to the dischargeability of a particular debt. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

## II. FINDINGS OF FACT

The Plaintiff is a business brokerage firm owned and operated by Vicki Wallace. The Plaintiff advises clients on the process of selling their businesses and assists with procuring buyers and closing the sale transactions. As of early 2018, the Plaintiff was operating under the name Transworld Business Advisors of North Dallas ("Transworld North Dallas") as a

---

[2] *Joint Pretrial Order* [Docket No. 25].

[3] Any Finding of Fact more properly construed as a Conclusion of Law shall be considered as such, and *vice versa*.

franchisee of Transworld Business Advisors, LLC with rights to market and source deals in two territories in North Texas.

On May 15, 2018, the Plaintiff purchased a business brokerage franchise called Transworld Business Advisors of North DFW and its assets from Tiffany Swartz[4] as a means of obtaining the rights to operate in three more territories in North Texas.[5] The terms of the transaction were memorialized in a Purchase Agreement between Ms. Swartz and Swartz Brokerage, LLC collectively as "Seller" and Vicki Wallace and Plaintiff VL Wallace Investments, LLC collectively as "Purchaser."[6]

Ms. Wallace testified that it was an important part of the transaction that Ms. Swartz would be working with the Plaintiff as a producing salesperson rather than competing against the Plaintiff. For this reason, at the time of the purchase, Transworld North Dallas also entered into an Independent Contractor Agreement Between Broker and Salesperson (the "Independent Contractor Agreement")[7] with Ms. Swartz and included non-compete provisions in both the Purchase Agreement[8] and the Independent Contractor Agreement.[9] The non-compete provisions are worded slightly differently but, in very general terms, prohibit Ms. Swartz from working in the business brokerage industry in competition with the Plaintiff anywhere in Texas for a period of at least five years.

Ms. Swartz worked on deals for the Plaintiff between May 2018 and December 2019 for which she received commissions, but it appears that Ms. Swartz also worked with a competitor

---

[4] At different times, Ms. Swartz has also gone by the name Tiffany Yordy and Tiffany Tavernier, but the Court will refer to her as Ms. Swartz in these Findings and Conclusions.

[5] The Plaintiff also began using the name of Transworld North DFW following the transaction.

[6] *See* Plaintiff's Exhibit 1.

[7] *See* Plaintiff's Exhibit 2.

[8] Purchase Agreement § 14(e).

[9] Independent Contractor Agreement § 21.

during that same period.[10] The allegation by the Plaintiff is that Mr. Hartman both encouraged Ms. Swartz to compete with the Plaintiff and assisted her in doing so.

Mr. Hartman is in the business of (1) helping business owners sell their businesses, (2) helping businesses raise capital through debt or equity, and (3) investing in or acquiring businesses. Mr. Hartman was familiar with Ms. Swartz prior to her dealings with Ms. Wallace, having purchased a business through Ms. Swartz in 2016. Since then, Ms. Swartz would let Mr. Hartman know about potential investments. Because of their business relationship, Mr. Hartman was generally aware that Ms. Swartz was attempting to sell Transworld North DFW, but he did not know the specifics of the transaction or when it happened.

As part of their business relationship, Mr. Hartman also testified that he would occasionally give Ms. Swartz cash gifts upon request in the hope that she would continue to direct future investment opportunities to him. For instance, in July 2018, Mr. Hartman gave Ms. Swartz $34,250 as a gift to, among other things, help her care for her children. Mr. Hartman gave cash gifts to Ms. Swartz totaling an additional $29,500 on six more occasions, with the next time being June 2019.

In September 2018, Mr. Hartman spoke with Ms. Swartz about her obligations under the Purchase Agreement and her Independent Contractor Agreement and gave Ms. Swartz contact information for an attorney she could talk to about her obligations. Around this same time, Ms. Swartz sent Mr. Hartman copies of the Purchase Agreement and her Independent Contractor Agreement, which he forwarded to the attorney.

---

[10] The Court notes that Ms. Swartz did not testify at trial, so she was not able to respond to the allegations made against her. Mr. Hartman objected to witnesses testifying to Ms. Swartz's out of court statements, but the Court overruled that objection on the basis that some of those statements were made by Ms. Swartz in her capacity as an agent of Advantage Business Brokers, LLC and some of those statements were not offered for the truth of the matter asserted.

In October 2018, Mr. Hartman's company, Hartman Investments, LLC, started a business brokerage firm named Advantage Business Brokers, LLC ("Advantage"). Advantage is in the same business as the Plaintiff but operates slightly differently. As opposed to a franchise model where there is a parent company that provides tools to franchisees and divides up territories, Mr. Hartman describes Advantage as an open platform that allows any broker to use its services without committing to an exclusive relationship with the platform. In addition, Mr. Hartman testified that Advantage generally charges lower commissions than the Plaintiff and may be more suitable for certain types of clients.

Mr. Hartman testified that Ms. Swartz approached him about using the Advantage platform in late 2018, and he did not object to her doing so. At the time, Mr. Hartman was under the impression from Ms. Swartz that she was not being paid amounts that she was owed by Ms. Wallace under the Purchase Agreement, that she had many other problems with Ms. Wallace, and that her agreements with Ms. Wallace were no longer in effect.

Ms. Swartz did not have a written independent contractor agreement with Advantage and did not have a written commission schedule, but as of November 22, 2018, Ms. Swartz did have an e-mail address with Advantage.[11] Ms. Swartz also obtained additional e-mail addresses for use by a group called the "Yordy" group.[12] Mr. Hartman testified that he did not think this was unusual since Ms. Swartz was beginning to work with Joseph Yordy, and Mr. Hartman assisted with arranging for Mr. Yordy's business broker training.[13]

From November 2018 through December 2020, Ms. Swartz worked with Advantage by providing listings for the sale of client businesses to Advantage, by providing leads on buyers,

---

[11] Plaintiff's Exhibit 5.

[12] Plaintiff's Exhibit 5.

[13] Ms. Swartz was later married to Mr. Yordy from May through September of 2019, but she apparently began using "Yordy" as her last name before the marriage and at least as early as March 2019. See Plaintiff's Exhibit 19.

and by engaging in other marketing activities.[14]  Some of the leads that Ms. Swartz used while working with Advantage came from the Plaintiff, and during this time period, Ms. Swartz received commissions from Advantage for closing at least six transactions.[15]

Ms. Swartz also appears to have copied the Plaintiff's business forms for use in transactions Ms. Swartz was working on through the Advantage platform.[16]  With regard to the business forms, the evidence showed that Ms. Swartz used the Plaintiff's forms on her deals with Advantage, but not that these forms were generally used by Advantage or anyone else working with Advantage.

Around July 2019, Ms. Wallace learned that Ms. Swartz may be working for Advantage and called Ms. Swartz to confront her about it.  The timeline following that conversation is somewhat unclear, but it appears that Ms. Wallace did not take immediate action against Ms. Swartz partially because Ms. Wallace did not yet have compete information about Ms. Swartz's activities and partially because of Ms. Wallace's extenuating personal circumstances.  During late 2019 though, Ms. Wallace learned additional detail about Ms. Swartz's relationship with Advantage.

There was an exchange of text messages between Ms. Swartz and Mr. Hartman beginning on December 13, 2019 that also sheds some light on what was going on.[17]  Ms. Swartz told Mr. Hartman that her problems with Ms. Wallace were intensifying and asked Mr. Hartman if she had "any legal leg to stand on since I did compete?"  A few things are apparent from this conversation:

---

[14] *See, e.g.*, Plaintiff's Exhibits 6, 7, 8, 33, 40, and 47.

[15] Plaintiff's Exhibit 14, 35, and 44.

[16] *See* Plaintiff's Exhibits 16, 24, 26, and 28.

[17] Plaintiff's Exhibit 4.

- Mr. Hartman knew that Ms. Swartz was bringing listings from the Plaintiff to the Advantage platform.

- Mr. Hartman was under the impression that Ms. Swartz had already told Ms. Wallace that she was competing with the Plaintiff by taking listings to the Advantage platform and Ms. Wallace did not object.

- Ms. Swartz had not told Ms. Wallace as much as Mr. Hartman was led to believe.

- Mr. Hartman was under the impression that Ms. Wallace was not paying Ms. Swartz money that was owed and that Ms. Swartz had causes of action against Ms. Wallace.

- Mr. Hartman encouraged Ms. Swartz to continue working with Advantage and putting listings under his name.

Ms. Wallace terminated the Independent Contractor Agreement with Ms. Swartz effective as of December 16, 2019.

On May 7, 2020, the Plaintiff filed a lawsuit against Ms. Swartz, Mr. Hartman, Advantage and others. The causes of action against Mr. Hartman include tortious interference with contract, knowing participation in breach of fiduciary duty, and civil conspiracy. On December 2, 2020, Mr. Hartman filed a voluntary petition for bankruptcy under Chapter 7.

### III. CONCLUSIONS OF LAW

As previously stated, the Plaintiff seeks to except its claims from Mr. Hartman's discharge under section 523(a)(6). Exceptions to discharge must be strictly construed against the creditor and liberally construed in favor of the debtor. *See FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011). The party promoting the exception to discharge must prove by a preponderance of the evidence that the debt is nondischargeable. *Id.* (citing *Grogan v. Garner*, 498 U.S. 279 (1991)).

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt for willful and malicious injury by the debtor to another entity. The burden on the plaintiff to prove a "willful" and "malicious" injury requires a showing of "deliberate or intentional injury, not

7

merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). This injury may include physical harm or financial harm. *Helvetia Asset Recovery, Inc. v. Kahn (In re Kahn)*, 533 B.R. 576, 588 (Bankr. W.D. Tex. 2015). The Fifth Circuit Court of Appeals has clarified that to find the debtor's injury is "willful and malicious" within the meaning of section 523(a)(6), the plaintiff must establish "either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). The Fifth Circuit Court of Appeals has further clarified that for an injury to be willful and malicious, it must also "not be sufficiently justified under the circumstances." *Berry v. Vollbracht (In re Vollbracht)*, 276 F. App'x 360, 362 (5th Cir. 2007).

The Plaintiff generally alleges that Mr. Hartman formed Advantage for the purpose of providing Ms. Swartz with a platform to directly compete with the Plaintiff in violation of the Purchase Agreement and the Independent Contractor Agreement and in doing so aided Ms. Swartz in usurping the Plaintiff's business opportunities.[18] The Plaintiff further alleges this was part of a plan for Mr. Hartman to take commissions that he knew rightfully belonged to the Plaintiff.

The Plaintiff introduced some evidence that was certainly curious but did not clearly support its case. A good example of this was Ms. Swartz's use of different last names. While this was unusual, there was no evidence that Mr. Hartman encouraged Ms. Swartz to do this to hide listings from the Plaintiff or even knew that Ms. Swartz used the last name of someone to whom she was not yet married. The cash gifts from Mr. Hartman to Ms. Swartz are another

---

[18] The Plaintiff also alleged that Mr. Hartman aided Ms. Swartz in copying the Plaintiff's confidential business forms, but the evidence did not support a finding that Mr. Hartman was aware of where those forms came from. While Ms. Swartz used the Plaintiff's forms on some of her deals with Advantage, there was no evidence that these forms were generally used by Advantage or anyone else working with Advantage or that the Plaintiff was injured by the use of these forms rather than the forms in Advantage's own library.

8

example of a curious fact. Mr. Hartman testified that these gifts were meant to support Ms. Swartz and her children, but one of those gifts may have been used to assist with her transition from the Plaintiff to Advantage. The record left it unclear though how these funds would have assisted in Ms. Swartz's transition or whether they were meant to somehow induce such a transition.

The Plaintiff has also identified several facts in the record that more directly support its allegations, but there are generally reasonable explanations for those facts. For instance, the Plaintiff points to the fact that the listings that Ms. Swartz brought to the Advantage platform were put under Mr. Hartman's name, at his request. The Plaintiff claims this is evidence that Mr. Hartman was trying to conceal the fact that these listings came from the Plaintiff, but Mr. Hartman testified credibly that it is his practice that all listings on the Advantage platform are put under his name, not just those from Ms. Swartz.

The Plaintiff similarly did not provide compelling evidence for the more general allegation that Mr. Hartman formed Advantage for the purpose of providing Ms. Swartz a platform to compete with the Plaintiff. Mr. Hartman testified credibly that the timing of the formation of Advantage had to do with his need to bundle assets in an entity that he could transfer to his ex-wife to satisfy property settlement obligations from their divorce. Mr. Hartman also testified that Ms. Swartz was not the first broker registered on the Advantage platform. Rather, Mr. Hartman estimated that Ms. Swartz was closer to the fiftieth or sixtieth broker registered on the platform and that Advantage currently has over 120 active brokers using the platform.

Mr. Hartman generally disclaims responsibility for investigating Ms. Swartz's legal obligations to the Plaintiff, but it is still useful to examine what he knew at the time Ms. Swartz

began using the Advantage platform. Mr. Hartman was aware that Ms. Swartz's contracts with the Plaintiff had non-compete provisions, and those documents were sent to him. Mr. Hartman did not have his attorney examine those provisions, but he did refer Ms. Swartz to an attorney who could. Mr. Hartman knew that Ms. Swartz still chose to work with the Advantage platform after being referred to an attorney so that she could understand her legal obligations. Mr. Hartman was also under the impression that Ms. Wallace was in breach of the agreements with Ms. Swartz and that Ms. Swartz believed the agreements to be null and void. Mr. Hartman knew that Ms. Swartz was bringing listings from the Plaintiff to Advantage, but he was also under the impression that Ms. Swartz was telling Ms. Wallace about the listings that were going to Advantage and Ms. Wallace did not object. Through all of this, Ms. Wallace did not contact Mr. Hartman or Advantage. Mr. Hartman claims that based on this, he believed Ms. Swartz was bringing listings to the lower-cost Advantage platform that were not a good fit for the Plaintiff, which had a higher-cost business model.

Based on what Mr. Hartman knew at the time, a reasonable person would not have known that his actions were substantially certain to cause harm to the Plaintiff. And if Mr. Hartman could not have known that his actions were substantially certain to cause harm to the Plaintiff, it is difficult to see how the harm could have been willful and malicious.

Even beyond Mr. Hartman's knowledge though, on the record before the Court, the evidence is that Ms. Swartz made allegations of wrongdoing against Ms. Wallace that would have relieved Ms. Swartz of her obligations under the Purchase Agreement and the Independent Contractor Agreement. Ms. Swartz did not testify, so the Court is not certain what those allegations were and cannot be certain that those allegations were unfounded.

Based on the evidence before the Court, it does not appear that Mr. Hartman committed any acts with the subjective motive to cause harm to the Plaintiff, and the Plaintiff has not satisfied its burden of showing by a preponderance of the evidence that Mr. Hartman's actions would cause harm to the Plaintiff with objective substantial certainty.

Although the Court need not address damages since the Plaintiff has not satisfied its burden of showing an entitlement to a declaration of nondischargeability, the Court does wish to make one comment on the amount of damages sought by the Plaintiff. In its trial brief, the Plaintiff argues that "the Court should find that the amount that is excepted from discharge is an amount equal to the total sales commissions obtained by Defendant individually, Advantage Business Brokers, LLC (including payments to its vendors and legal counsel), and Tiffany Swartz from November 2018 to December 1, 2020" and further argues that "[t]his total amount should be awarded to Plaintiff upon the conclusion of trial."[19] The Plaintiff also filed supplemental briefing at the conclusion of trial that seeks to justify this request based on a breach of fiduciary duty theory.[20] Mr. Hartman argues that this theory has been waived,[21] and the Plaintiff has filed a reply to that argument.[22] Ultimately, the Plaintiff requests a judgment for all amounts received by Mr. Hartman, Advantage, and Ms. Swartz in connection with six transactions, without deduction for any of the sales commissions or other expenses that Advantage had to pay (and that the Plaintiff would have had to pay if the Plaintiff had closed those transactions). The Court only wishes to comment that this amount greatly exceeds Mr. Hartman's profits or any injury to the Plaintiff and would constitute a windfall if awarded.

---

[19] *Plaintiff's Trial Brief* [Docket No. 19] at 4.

[20] *Plaintiff's Bench Brief on Disgorgement of Profits as a Measure of Damages* [Docket No. 43].

[21] *Defendant Scott Hartman's Brief in Response to Plaintiff's Brief on "Disgorgement of Profits as a Measure of Damages"* [Docket No. 47].

[22] *Plaintiff's Reply in Support for its Bench Brief on Disgorgement of Profits as a Measure of Damages* [Docket No. 48].

## IV.  CONCLUSION

While there are some concerning facts in this case, Mr. Hartman has provided credible explanations for most of them, and the Plaintiff has not satisfied its burden to except its debt from discharge under section 523(a)(6). For the reasons stated above, all relief requested in the Complaint will be denied.

###END OF FINDINGS AND CONCLUSIONS###